IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRENTON DAVID BLISS, # 07421-025, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ROSE, )<br>CENTERSTONE HALF-WAY HOUSE, )<br>and WILLIAMSON COUNTY JAIL, )<br>)<br>Defendants. ) | Case No. 17-cv-1205-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is currently incarcerated at the Fayette County Jail.[1]  He has brought this *pro se*

action, invoking the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and claiming violations

of his rights while he was detained in 2015-2016 at the Williamson County Jail and undergoing

treatment at the Centerstone Half-Way House.  He claims that necessary prescription medication

was withheld from him while he was housed in the Williamson County Jail, and asserts that Rose

violated his civil rights by causing his federal supervised release to be revoked.  This case is now

before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-

meritorious claims.  *See* 28 U.S.C. § 1915A(a).  The Court must dismiss any portion of the

complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

granted, or asks for money damages from a defendant who by law is immune from such relief.

28 U.S.C. § 1915A(b).

---

[1] Plaintiff's current incarceration is unrelated to the claims he raises in this lawsuit.  (Doc. 1, p. 8).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that this action is subject to summary dismissal.

## The Complaint

At the end of December 2015, Plaintiff entered a 120-day treatment program at the Centerstone Half-Way House ("Centerstone"), at the direction of his federal parole officer.[2]

---

[2] Plaintiff was serving an 8-year term of supervised release, pursuant to a conviction for drug offenses in this Court. *United States v. Bliss*, Case No. 07-cr-30180-DRH. The Court takes judicial notice of the records of proceedings in that criminal case. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (court can take judicial notice of court documents, which are public records).

(Doc. 1, p. 5). During this program, Plaintiff was housed at the Williamson County Jail ("the Jail") when he was not attending the program at Centerstone. For the first several weeks, he was attending regular meetings and doing well in the program.

In February 2016, Plaintiff had a disagreement with Clinical Assistant Rose (a Centerstone employee) and another Centerstone staff member, when he attempted to leave the Centerstone property with the permission of his counselor to take his vehicle to a nearby car wash to vacuum broken glass from the floorboards. Rose stopped Plaintiff and told him he could not leave the premises. Plaintiff went back into the office to talk to another staff member, and the issue was resolved when Plaintiff was allowed to use a shop-vac on the Centerstone property. However, Plaintiff believes the incident prompted Rose to target him for unfair treatment. (Doc. 1, p. 5).

Several weeks later, Plaintiff was with his girlfriend in her vehicle while she was visiting him, and the engine caught fire. Plaintiff's hands were severely burned when he put the fire out. He went to the emergency room, and a call was made to Centerstone to inform staff he would be late getting back to the Jail that night. (Doc. 1, p. 5).

After returning to the Jail, Plaintiff was held there with "no movement." (Doc. 1, p. 6). A guard who observed the blisters on Plaintiff's hands called Centerstone to get permission to take Plaintiff back to the emergency room. Rose instructed the guard to make Plaintiff wear a jail jumpsuit for his trip to the hospital; this request was against normal policy because Plaintiff was not serving a sentence, but was merely housed at the Jail pursuant to a contractual arrangement. *Id.* Plaintiff wore the jumpsuit to the hospital.

On the way back to the Jail, the driver stopped at Centerstone, where Rose had Plaintiff sign a paper to take a drug test, to which he did not object. Rose then made Plaintiff empty his

pockets, taking his phone and truck keys. He claims that normally, these items would be returned to him before he went to the drug testing area. However, Rose refused to give back Plaintiff's phone because "she found evidence of unaccountability on it." (Doc. 1, p. 6). After Plaintiff objected, she told him he would not get his truck keys back either. Plaintiff became very upset and asked to call the police or his federal parole officer, but Rose refused to allow this. Rose then escorted Plaintiff back to the Jail, gave Plaintiff's truck keys to the guard, and instructed the guard not to give Plaintiff his keys. The drug test was not done.

Before leaving Centerstone following the ER visit, Plaintiff had given Rose the prescription paperwork he received from the emergency room doctor for a cream to treat his burns. Rose promised to get the prescription filled for Plaintiff, but she failed to do so. As a result, Plaintiff never received the prescribed treatment for his painful burned hands. (Doc. 1, p. 7). Similarly, Centerstone staff failed to obtain a refill of Plaintiff's medicine for nerve damage to his back after his supply ran out.

The day after Plaintiff's confrontation with Rose, he was taken from the Jail to the ER again for panic attacks and to check his heart condition. While there, he had blood and urine tests that showed he was not under the influence of drugs or alcohol. (Doc. 1, p. 7). Plaintiff was given several other prescriptions for anxiety and chest pain. The prescription orders were given to Centerstone staff to be filled and brought to Plaintiff at the Jail, but he never received the medications.

At some point, Rose allegedly informed Plaintiff's federal parole officer that he had refused to undergo a drug test. This was not true, however; Plaintiff had agreed to take the test, but claims that Rose would not allow him to go through with it after their argument over his phone and keys. Plaintiff was "unlawfully detained" for another couple weeks at the Jail, and

then was served with a petition to revoke his supervised release. Plaintiff claims this petition was triggered by Rose's allegation that he refused the drug test.

When the petition was heard (in this Court, Case No. 07-cr-30180-DRH), Plaintiff's attorney produced the clean results from Plaintiff's drug test in the ER, and the prosecutor dismissed the allegation that Plaintiff had refused the test. However, Plaintiff's supervised release was still revoked, and he was sentenced to serve 1 year and 1 day in prison. (Doc. 1, p. 7). Plaintiff asserts that Rose's false accusation regarding the drug test refusal was the reason why the revocation petition was filed. (Doc. 1, p. 8). He believes that but for that false claim, there would not have been a revocation hearing, and he would not have been sent back to prison. As a result of the supervised release revocation, Plaintiff lost his home, his job, and the opportunity to seek custody of his 8-year-old son.

Plaintiff seeks compensatory damages for his lost wages, "illegal detention" at the Williamson County Jail, the suffering he endured from his medical conditions, and intentional infliction of emotional distress, as well as other relief. (Doc. 1, p. 9).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Claim for damages for "illegal detention" at the Williamson County Jail;

**Count 2:** Claim against Rose for falsely reporting that Plaintiff refused to

undergo a drug test and for causing Plaintiff's parole to be revoked;

**Count 3:**  Deliberate indifference claim against Rose and Centerstone for taking Plaintiff's prescription orders and failing to fill the prescriptions for him;

**Count 4:**  Claim against Rose for intentional infliction of emotional distress.

Each of these claims shall be dismissed without prejudice, for failure to state a claim upon which relief may be granted.

**Applicability of the Federal Tort Claims Act**

The form complaint Plaintiff used to set forth his claims gives the prisoner-plaintiff the option to label the action as arising under 42 U.S.C. § 1983 (for state prisoners); 28 U.S.C. § 1331 (federal prisoners); or the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 and 2671-2680.  Plaintiff selected the FTCA as the basis for his claims.  (Doc. 1, p. 1).  The FTCA provides jurisdiction for suits against the United States arising from torts committed by federal officials.  *See* 28 U.S.C.A. § 2679(b)(1) (FTCA claim may be brought against the United States "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment") (emphasis added).  The United States of America is the only proper Defendant in an action under the FTCA.  *See* 28 U.S.C. § 2679(b); *FDIC v. Meyer*, 510 U.S. 471 (1994).

Plaintiff has not named the United States as a Defendant in this action.  But a more fundamental problem is that none of the named Defendants is a federal employee.  According to the Complaint, Rose is an employee of the Centerstone Half-Way House.  According to its website, Centerstone is a private, not-for-profit corporation that provides mental health and addiction services.  *See* www.centerstone.org (last visited Jan. 12, 2018).  The Williamson County Jail is an entity under the control of the county government; it is not a federal employee.

The Federal Tort Claims Act thus does not apply to Plaintiff's claims herein.

Alternatively, the Court shall examine whether Plaintiff has viable claims under 42 U.S.C. § 1983 against a state or municipal entity, or against a federal actor pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

### Dismissal of Count 1 – Detention at Williamson County Jail

It appears that Plaintiff was housed in the Jail as part of the arrangement for him to undergo treatment at Centerstone (presumably as an outpatient). He describes a situation where his movement was controlled, and he was expected to return to and remain at the Jail at all times when he was not involved in a program on the Centerstone premises. Exceptions were allowed for him to visit the emergency room, but such a visit had to be authorized by Centerstone staff. Plaintiff mentions that he was housed at the Jail as part of some contractual arrangement; he was not there under any state sentence. However, he was a former federal prisoner, serving a term of supervised release after completing his term of federal incarceration. Thus, he had to comply with the terms of his supervised release and with the directions of his parole officer.

The Complaint indicates that Plaintiff was compelled to enroll in the Centerstone treatment program (and the Jail housing arrangement) as part of his supervised release plan – he states that his "orders" were to attend services for 120 days, and then he could return home. (Doc. 1, p. 5). Once he was in the program, Plaintiff's narrative suggests that he was not free to walk away from either the Jail or the Centerstone program; presumably he would be in violation of the terms of his supervised release if he did so.

This context strains the theory that Plaintiff was "illegally incarcerated" in the Williamson County Jail. The facts indicate that Plaintiff was there to fulfill a requirement of the terms of his federal supervised release, and he was under the supervision of his federal parole

officer during the time he was housed at the Jail. Plaintiff's supervised release term was part of the sentence imposed on him after he pled guilty in this Court in Case No. 07-cr-30180-DRH. The supervised release portion of Plaintiff's sentence had not been discharged at the time he was housed in the Williamson County Jail while enrolled in the Centerstone program. Plaintiff's claim for damages as a result of his confinement at the Jail while on supervised release is therefore barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that a civil rights action for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not cognizable until the conviction or sentence has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. at 486-87. Plaintiff's federal conviction and sentence, which included the term of supervised release, was still in force at the time he was housed at the Jail. All indications are that Plaintiff was housed at the Jail as a direct result of the requirement to comply with condition(s) of his supervised release. Under *Heck*, Plaintiff cannot recover any damages related to imprisonment that resulted from his conviction, and this necessarily includes his confinement at the Williamson County Jail while on supervised release. **Count 1** shall therefore be dismissed without prejudice.

### Dismissal of Count 2 – Revocation of Supervised Release

Plaintiff asserts that Rose's false accusation that he refused a drug test prompted his parole officer to file the petition that ultimately led to the revocation of his supervised release. Even if this is true, the alleged violation based on Rose's claim was stricken from the petition. According to the records in Plaintiff's criminal case, the revocation of his supervised release was grounded on 4 distinct allegations that Plaintiff admitted to having unlawfully possessed a

controlled substance.[3]  (Docs. 108, 123 in *United States v. Bliss*, Case No. 07-cr-30180-DRH). Plaintiff pled guilty to violating the conditions of his supervision, and the Court revoked his supervised release on April 7, 2016.  (Doc. 123 in criminal case).

Plaintiff cannot recover money damages for the revocation of his supervised release, even if the revocation was in fact premised on Rose's claim that he refused a drug test.  Such a claim for damages is barred under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), as discussed under Count 1.  It is not possible to know whether the parole officer would still have filed the revocation petition if Rose had not falsely accused Plaintiff.  But in the end, the revocation came about because Plaintiff admitted to other violations of the terms of his supervision, and entered a guilty plea in the revocation hearing.  Rose cannot be held liable for this outcome, and **Count 2** shall also be dismissed from the action.

### Dismissal of Count 3 – Deliberate Indifference to Medical Needs

"A prisoner's claim for deliberate indifference must establish (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition.  Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

---

[3] According to the petition to revoke supervision, Plaintiff admitted to unlawfully possessing a controlled substance on February 4, October 21, December 13-14, and December 28, 2015.  (Doc. 108 in Case No. 07-cr-30180-DRH).

The failure to provide Plaintiff with medications that were prescribed for him by a doctor in order to treat his painful burned hands, as well as his panic attacks, heart condition, and nerve damage, could support a civil rights claim for deliberate indifference to Plaintiff's serious medical needs. He seeks to hold Rose and Centerstone, and possibly the Williamson County Jail, liable for withholding those necessary medications from him.

In order for such a claim to proceed in federal court as a civil rights claim, however, Plaintiff's constitutional rights must have been violated either by a person acting under color of state law in violation of 42 U.S.C. § 1983, or by a person who was acting under the color of federal authority (*see Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)).

In Plaintiff's case, he was denied his prescribed medications while he was housed in the Williamson County Jail. The Jail is a municipal entity. A municipality may be sued in a § 1983 civil rights action if the violation of the plaintiff's constitutional rights was caused by an official policy, custom, or practice of the municipality. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006). In this case, however, nothing in the Complaint suggests that the failure to provide Plaintiff with his medications was due to any policy or practice implemented by the Jail. Instead, Plaintiff states that he handed over his prescription paperwork either to Rose or to some other staff person employed by Centerstone, and that those individuals took responsibility for filling his prescriptions and providing him with the medications – but failed to follow through. This factual scenario does not support a deliberate indifference claim against the Williamson County Jail. Thus, the Jail shall be dismissed from Count 3 and from the action.

Turning to Centerstone and Rose, these Defendants are not state or municipal entities or employees, and there is nothing to indicate either Defendant was acting "under color of state

law." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'") (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). Plaintiff alleges that Rose is an employee of Centerstone, and Centerstone is a private organization. A plaintiff cannot proceed with a federal claim under § 1983 against a non-state actor. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 852-53 (7th Cir. 2003). Accordingly, § 1983 is inapplicable to Plaintiff's claims against Rose and Centerstone.

As noted above in the discussion of the applicability of the FTCA, neither Rose nor Centerstone is a federal entity or employee. Because Plaintiff was participating in the Centerstone treatment program as a federal parolee, it is conceivable that Centerstone might be a federal contractor. However, the Supreme Court has held that a *Bivens* claim cannot be brought against a private entity or individual, even if it is a federal contractor. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63, 66, 70-72 (2001); *see also Muick v. Glenayre Elec.*, 280 F.3d 741, 742 (7th Cir. 2002). Only an individual federal officer may be sued in a *Bivens* action. For this reason, Rose and Centerstone must also be dismissed from this claim.[4]

As Plaintiff has failed to state a viable deliberate indifference claim against any of the Defendants under **Count 3**, this count shall be dismissed without prejudice.

Plaintiff may be able to pursue claims in Illinois state court against Rose and/or Centerstone for their failure to provide him with prescribed medications. The Court makes no comment on the merits or timeliness of such a claim.

---

[4] Because Rose is an Illinois resident, and the other Defendants are Illinois entities, no diversity jurisdiction is apparent that would allow the claim to remain in federal court. *See* 28 U.S.C. § 1332.

**Dismissal of Count 4 – Intentional Infliction of Emotional Distress**

Illinois recognizes a tort claim for intentional infliction of emotional distress. Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla.1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

A plaintiff in federal court may bring a claim for intentional infliction of emotional distress against a federal employee, pursuant to the FTCA. However, as discussed above, the FTCA is inapplicable to the named Defendants in this case, as none of them are federal employees.

It is also possible to bring a state law claim in a federal civil rights action, under the Court's supplemental jurisdiction, where there is a viable federal claim against the same Defendant that survives review under § 1915A. *See Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008) (a district court that has original jurisdiction over a civil action also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims). However, where all federal claims are dismissed, the usual practice is to dismiss

without prejudice any state supplemental claims.  *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).  The Court sees no reason to depart from this practice in this case.

Because Counts 1, 2, and 3 shall be dismissed, **Count 4** against Rose for intentional infliction of emotional distress shall also be dismissed without prejudice.  Plaintiff may be able to bring this claim in Illinois state court.  Again, the Court makes no comment on the merits or viability of such a claim in that forum.

## Amendment of Complaint

"When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (citing Fed. R. Civ. P. 15(a)).  However, if it is clear that any amendment of the complaint would be futile, leave to amend need not be granted.  *Bogie*, 705 F.3d at 608.

In Plaintiff's case, none of the claims for relief survive threshold review under § 1915A. For the reasons explained in the discussion of each count, the Court concludes that an effort to re-plead the claims herein against the named Defendants would be futile.  Counts 1 and 2 are barred at this time by the *Heck* doctrine, regardless of who the named defendant might be. Plaintiff's factual narrative underlying the deliberate indifference claim in Count 3 does not suggest that any other person not named in the Complaint was personally involved in the failure to provide Plaintiff's medication, such that a viable claim might be stated against a different defendant who would be amenable to suit in a federal civil rights action.  Count 4 cannot stand alone in this action in the absence of a viable federal claim against Rose.  Accordingly, this case shall be dismissed without leave to amend the Complaint.  The dismissal shall not preclude Plaintiff from pursuing his claims in state court, should he wish to do so.

### Disposition

For the reasons stated above, this action is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. All pending motions are **DENIED AS MOOT.**

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). A dismissal without prejudice may count as a strike, so long as the dismissal is made because the action is frivolous, malicious, or fails to state a claim. *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011).

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the balance of the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: January 18, 2018**

*s/J. Phil Gilbert*
United States District Judge